B. Benedict WATERS, Plaintiff–
Appellant,

v.

Charles YOUNG, Defendant,

and

Paul Townsend and William Cormier,
Defendants–Appellees.

No. 95–56055.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1996.

Decided Nov. 19, 1996..

B. Benedict Waters, Los Angeles, CA, in pro per for plaintiff-appellant.

Melinda W. Ebelhar, Hagenbaugh & Murphy, Glendale, CA, for defendants-appellees.

Before PREGERSON, BOOCHEVER and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Byron Benedict Waters appeals from the district court's rejection of his civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1985(3) against employees of the University of California at Los Angeles (UCLA). Waters argues on appeal that the district court erred in granting the defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) without first apprising him of the deficiencies in his proof and giving him an opportunity to present further evidence on any dispositive facts. We agree and remand for a new trial.

### BACKGROUND

Waters is an African–American male who formerly worked as a temporary employee at UCLA. From 1986 to 1987, he was assigned to work in the mailroom at UCLA Capital Programs, an organization that performs general contracting work for the university. During that time, he met his current girlfriend, a white woman and mailroom co-worker. Waters has alleged that one of his supervisors at Capital Programs made a variety of disparaging and racist remarks about his interracial relationship. When a career position in the mailroom opened, it was offered to him, but following the alleged criticism of his interracial relationship, the offer was withdrawn. Waters then applied for another career position at Capital Programs as an "Administrative Assistant II." Citing budgetary constraints, Capital Programs si-

multaneously eliminated both that position and Waters' temporary position in the mailroom. Alleging civil rights violations, Waters filed a variety of lawsuits in state and federal court against Capital Programs staff and other UCLA employees.

In 1989, Waters again applied to work at Capital Programs, this time as a "Secretary II." Responsibility for the decision to reject his application was apparently shared by appellees Paul Townsend, an executive assistant at Capital Programs, and William Cormier, the director of operations at Capital Programs. Cormier's letter informed Waters that he would not be considered either for that position or for others that might become available at Capital Programs "in the near future." Although the letter specifically denied that the decision to exclude Waters was in response to his previous lawsuits against UCLA employees, it characterized his conduct in the prosecution of those suits as "seek[ing] only to ridicule, embarrass, degrade and intimidate University employees, including those who would be your co-workers." [1]

In 1990, Waters filed the present pro se action in district court against twenty-two defendants, including Townsend, Cormier, and UCLA Chancellor Charles Young. Waters asserted, inter alia, claims under 42 U.S.C. § 1981 for employment discrimination on the basis of race; claims under 42 U.S.C. § 1983 for retaliatory refusal-to-hire based on his prior lawsuits; and claims under 42 U.S.C. § 1985(3) for conspiracy to violate his civil rights. Prior to trial, the district court dismissed or otherwise rejected all of his claims except for his §§ 1981, 1983, and 1985(3) claims against Townsend and Cormier.

Waters' remaining claims against Townsend and Cormier proceeded to trial in 1995. Waters represented himself throughout the district court proceedings, which lasted a total of one hour and twenty minutes. Follow-

ing opening arguments, Waters examined himself regarding his employment history and his current duties as chief neuropsychological assessor at the Brentwood Movement Disorders Clinic, a research project funded by UCLA. Waters testified that in 1989 he applied for a "Secretary II" position advertised at UCLA Capital Programs, and that he received a letter from Cormier informing him that he would not be considered for any position at Capital Programs then or in the near future. Although Waters testified as to his own job skills and qualifications, he did not testify as to the requirements of the Secretary II position or the qualifications of the person eventually hired.

At the end of his testimony, Waters stated that he had completed his direct examination. Prompted by the district court, the defendants made their first motion for judgment as a matter of law under Rule 50(a):

> THE COURT: Okay. Mr. Waters has completed his direct examination, now. This is the beginning of cross examination, correct?
>
> MR. WATERS: Yes.
>
> MS. MUSICANT: Yes.
>
> THE COURT: One minute. In my view, he's has [sic] not made a prima facie case. Do you have a motion?
>
> MS. MUSICANT: I move for judgment as a matter of law under Federal Rule of Civil Procedure 50.
>
> THE COURT: Motion granted.
>
> MR. WATERS: I'll be calling other witnesses.
>
> THE COURT: You will be calling—you didn't testimony me that [sic].
>
> MR. WATERS: Mr. Cormier and Mr. Townsend.
>
> THE COURT: I asked you that; you said, no.
>
> MR. WATERS: I can't testify as to their position after that.

1. Waters' conduct in the prosecution of these suits has been less than exemplary. He has repeatedly insulted UCLA staff and attorneys in his correspondence and has also been responsible for a variety of willful procedural violations, including his failure to appear at one deposition and his refusal to answer any questions at a subsequent deposition that the district court ordered him to attend. In an unpublished disposition, this court affirmed the dismissal of one of his suits as a result of these violations. *Waters v. Blackman*, Nos. 90–55675, 91–55053, 1991 WL 216978, at *3 (9th Cir. Oct. 24, 1991).

THE COURT: All right. All right.

The trial continued, and Waters called Townsend as his second witness. Townsend testified only that his duties included hiring for the position Waters had sought, that he had rejected Waters' application, and that he had subsequently hired a white woman for the position.

Waters then called Cormier as his third and final witness. Cormier testified as to the nature of his involvement in the decision to reject Waters and to Townsend's participation in that decision. Cormier asserted that Waters had made threats of physical violence against Townsend and a former supervisor, and claimed these threats as the basis for the rejection of Waters' application. Cormier also acknowledged that he had previously described Waters' behavior as "threatening" to himself, but clarified that what he found "threatening," "harassing," and "intimidating" was "the process of being involved in repeated litigation where I was called a racist."

Following Cormier's brief testimony, Waters rested. At this point, the district court again prompted defendants' counsel to move for judgment as a matter of law, and a brief sidebar ensued:

> MR. WATERS: I'll rest my case, your Honor.
>
> THE COURT: Very well. Is there a motion?
>
> MS. MUSICANT: Shall we approach?
>
> THE COURT: Approach sidebar.
>
> (SIDEBAR CONFERENCE BETWEEN THE COURT AND PARTIES HELD ON THE RECORD.)
>
> MS. MUSICANT: Your Honor, I make a motion under Federal Rule of Civil Procedure 50 on the grounds that Mr. Waters has not sustained his burden of proof and defendant should be entitled to judgment as a matter of law.
>
> THE COURT: Motion granted.
>
> MR. WATERS: I wish to be heard on the motion.
>
> THE COURT: Briefly.
>
> MR. WATERS: I did present a prima facie case. I applied for the job,

> submitted a written application. The application was rejected. After the application was rejected, they interviewed—they continued to interview. They hired a caucasian.
>
> THE COURT: Is that it?
>
> MR. WATERS: Yes.
>
> THE COURT: Motion granted.
>
> (END OF SIDEBAR CONFERENCE)

In a subsequent written order granting the motion, the district court stated that it found no legally sufficient evidentiary basis for a reasonable jury to have found for Waters on any of his claims. Included among the reasons given by the district court for its ruling was Waters' failure to introduce any evidence of the skills required for the Secretary II position, or of the qualifications of the person ultimately hired. The district court also stated, *post hoc*, that Waters failed to introduce evidence to show that the defendants' stated reason for their refusal to hire him was pretextual.

## DISCUSSION

■■■ Waters argues on appeal that Federal Rule of Civil Procedure 50(a) requires that a non-moving party be apprised of the deficiencies in its proof. Rule 50(a) reads:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. *Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.*

Fed.R.Civ.P. 50(a) (emphasis added). Rule 50(a) thus explicitly requires the moving party to "specify ... the law and the facts on which [it] is entitled to judgment." The Ad-

visory Committee Note to Rule 50 makes it clear that the trial court has an overlapping responsibility to inform the non-moving party of deficiencies in its proof and to afford that party an opportunity to correct any such deficiency. That note reads in relevant part:

> [T]he second sentence of paragraph (a)(1) authorizes the court to consider a motion for judgment as a matter of law as soon as a party has completed a presentation on a fact essential to that party's case. Such early action is appropriate when economy and expedition will be served. *In no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact.*

Fed.R.Civ.P. 50 advisory committee's note to 1991 amendment (emphasis added). The Advisory Committee note guides our interpretation of Rule 50. *See Selph v. Council of the City of Los Angeles,* 593 F.2d 881, 883 (9th Cir.1979) (citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946)).

 These obligations reflect a major purpose of the motion for judgment as a matter of law, which is "to call the claimed deficiency in the evidence to the attention of the court *and to opposing counsel* at a time when the opposing party is still in a position to correct the deficit." *Lifshitz v. Walter Drake & Sons,* 806 F.2d 1426, 1429 (9th Cir.1986) (emphasis added); *see also Farley Transp. Co. v. Santa Fe Trail Transp. Co.,* 786 F.2d 1342, 1345–47 (9th Cir.1985). This purpose is further demonstrated by the requirement in paragraph (a)(2) of Rule 50 that an initial motion for judgment be made prior to the close of trial: "The purpose of this requirement is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment." Fed.R.Civ.P. 50 advisory committee's note to 1991 amendment. Because a properly made motion under Rule 50(a) "specif[ies] the law and the facts on which the moving party is entitled to judgment," Fed.R.Civ.P. 50(a)(2), the motion

itself will ordinarily inform the non-moving party of the deficiencies in its proof by identifying the dispositive fact, and the trial court's remaining responsibility will be to afford that party "an opportunity to present any available evidence bearing on that fact" before ruling on the motion. Fed.R.Civ.P. 50 advisory committee's note to 1991 amendment; *see also Francis v. Clark Equipment Co.,* 993 F.2d 545, 553–56 (6th Cir.1993) (reversing judgment under Rule 50 where the trial court had interrupted plaintiff's case and granted judgment based on a summation of the evidence to be presented without specifying the dispositive issue or the controlling law). When a Rule 50 motion fails to identify the deficiencies in the non-moving party's proof, however, the trial court may not rule on the motion until it first apprises the non-moving party "of the materiality of the dispositive fact." Fed.R.Civ.P. 50 advisory committee's note. This requirement is a necessary and integral part of Rule 50: insofar as a Rule 50 motion is intended "to assure the responding party an opportunity to cure any deficiency in that party's proof," *id.,* that "opportunity" is rendered meaningless if the responding party is not informed of the dispositive facts on which it must introduce evidence.

It is especially important that trial courts fulfill their duties under Rule 50 when confronted with pro se litigants, who may be capable of producing the evidence necessary to sustain their claims but may not understand the time and manner in which they must do so. As a general matter, this court has long sought to ensure that pro se litigants do not unwittingly fall victim to procedural requirements that they may, with some assistance from the court, be able to satisfy. *See, e.g., Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (reasserting that pro se litigants must be given leave to amend complaint unless it is absolutely clear that amendment would be futile); *Garaux v. Pulley,* 739 F.2d 437, 439–40 (9th Cir.1984) (recognizing need to provide pro se litigants with proper notice of summary judgment procedures); *Sherman v. Yakahi,* 549 F.2d 1287, 1290 (9th Cir.1977) (recognizing that pleadings in pro se employment discrimination suit must be viewed under less stringent

standard); *Armstrong v. Rushing*, 352 F.2d 836, 837 (9th Cir.1965) (setting forth procedural protections for pro se civil rights plaintiffs).

The present case illustrates the particular need for trial courts to observe the requirements of Rule 50 where pro se litigants are involved. Having twice elicited and entertained Rule 50 motions that improperly failed to state the law and facts on which judgment was sought, the district court then failed to inform Waters of the deficiencies in his proof or to afford him the opportunity to present needed evidence. Yet the record reveals that evidence exists that, if introduced at trial, might have enabled him to overcome at least some of the purported deficiencies. For example, although the job applications of both Waters and the person who was ultimately hired for the Secretary II position set forth their respective qualifications and had been submitted by Waters as part of his successful effort to resist summary judgment, Waters never attempted to produce these at trial; nor did he testify as to the work he had performed as the equivalent of a "Secretary II" at the Brentwood Movement Disorders Laboratory. By introducing evidence that he was qualified for the position of Secretary II and that the person ultimately hired was similarly or less qualified than himself, he could have supplied missing elements of a prima facie case of disparate treatment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Lam v. University of Hawaii*, 40 F.3d 1551, 1559 (9th Cir.1994). We need not discuss here the evidence that Waters possessed or had already placed in the record regarding whether the reasons offered by the appellees for their refusal to hire him were pretextual. It appears from the circumstances of this case that pretext was a plausible contention. Indeed, the district court had previously denied appellees' motion for summary judgment on this very point. If the district court did not find Waters' showing at trial adequate on the issue of pretext, it was obligated to advise him of that fact before entering judgment against him.

█ Appellees attempt to salvage the district court's ruling by arguing that, because Waters has experience in bringing civil rights suits and was therefore familiar with the elements of such claims, he was not prejudiced by the district court's failure to give him the notice to which he was entitled under Rule 50. It is quite obvious from his actions that Waters did *not* understand the nature of the proof that he was required to introduce. More important, however, the relative legal expertise of a party cannot excuse the district court from its duties under Rule 50. The extent of a party's legal expertise is irrelevant for purposes of that rule. By its language, Rule 50 applies in all cases, including those in which parties are represented by highly qualified counsel. Compliance with the Rule, including the fulfilling by the court of its obligations as explained in the Advisory Committee note, is mandatory.

## CONCLUSION

█ Federal Rule of Civil Procedure 50 requires district courts to apprise parties of the deficiencies in their proof, and to give them an opportunity to present further evidence on the dispositive facts, before granting judgment as a matter of law against them. Although this requirement follows from the text, purpose, structure, and legislative history of Rule 50 and is mandatory in all cases, it is a particularly important requirement in the case of pro se litigants. Because Waters did not receive the notice and opportunity to which he was entitled under Rule 50, we must reverse and remand for a new trial.

REVERSED AND REMANDED.