**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY PATRICK REED,
*Plaintiff-Appellant/*
*Cross-Appellee*,

v.

DOUG LIEURANCE, in his
individual capacity; BRIAN
GOOTKIN, in his individual
capacity; GALLATIN COUNTY
SHERIFF'S OFFICE, a department
of Gallatin County; and
GALLATIN COUNTY,
*Defendants-Appellees/*
*Cross-Appellants*.

Nos. 15-35018
15-35179

D.C. No.
2:13-cv-00017-SEH

OPINION

Appeals from the United States District Court
for the District of Montana
Sam E. Haddon, Senior District Judge, Presiding

Argued and Submitted April 5, 2017
Seattle, Washington

Filed July 24, 2017

Before: Alex Kozinski and William A. Fletcher, Circuit
Judges, and John R. Tunheim,* Chief District Judge.

Opinion by Judge Tunheim

## SUMMARY**

## Civil Rights

The panel reversed the district court's summary judgment,
the district court's Fed. R. Civ. P. 12(b)(6) dismissals, and its
judgment as a matter of law, and dismissed for lack of
jurisdiction an appeal from the district court's order denying
defendants' motion for attorney fees, in an action brought
pursuant to 42 U.S.C. § 1983 and state law.

Plaintiff Anthony Reed alleged that his constitutional
rights were violated when he was arrested and cited while
volunteering to observe an interagency government
operation to herd buffalo into Yellowstone National Park.

Construing the facts in Reed's favor, the panel could not
conclude that as a matter of law, a reasonably prudent officer
in defendant Deputy Lieurance's situation would have had
probable cause to believe that Reed obstructed the herding
operation. The panel determined that the district court

---

* The Honorable John R. Tunheim, Chief United States District Court
Judge for the District of Minnesota, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

improperly invaded the province of the jury when it resolved factual disputes material to the question of probable cause. Thus, defendants were not entitled to summary judgment on Reed's unlawful seizure claim.

The panel reversed the district court's sua sponte dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of Reed's failure-to-train claim on the grounds that the district court did not first provide Reed with notice and an opportunity to respond before dismissing the claim. The panel further held that the district court abused its discretion by excluding the testimony of Reed's police practices expert as it related to the failure-to-train claim.

The panel held that the district court committed reversible error in granting judgment as a matter of law on Reed's First Amendment and related state claims without first providing Reed notice of the grounds for the decision. Addressing the merits of the First Amendment claim, the panel held that in ruling that defendants were entitled to judgment as a matter of law, the district court improperly resolved numerous factual disputes reserved for the jury.

The panel determined that it lacked jurisdiction to review the district court's denial without prejudice of defendants' motion for attorney fees and therefore dismissed defendants' cross-appeal from that order. On remand, the panel ordered that the case be reassigned to a different district judge.

**COUNSEL**

Rebecca Kay Smith (argued), Missoula, Montana, for Plaintiff-Appellant/Cross-Appellee.

Steven Robert Milch (argued), Billings, Montana, for Defendants-Appellees/Cross-Appellants.

**OPINION**

TUNHEIM, Chief District Judge:

On May 23, 2012, officers from the Gallatin County Sheriff's Office (the "Sheriff's Office") were involved in an interagency governmental operation to herd buffalo into Yellowstone National Park. Plaintiff-Appellant Anthony Patrick Reed was attempting to observe the herding operation as the buffalo were ushered across U.S. Route 191 ("Highway 191"). While Reed was parked at an observation point, Defendant-Appellee Deputy Doug Lieurance issued a misdemeanor citation to Reed for obstructing the herding operation and threatened him with jail time if he did not move. Reed brought this action under 42 U.S.C. § 1983, arguing that Deputy Lieurance's actions violated Reed's First and Fourth Amendment rights and related Montana constitutional rights and that Gallatin County Sheriff Brian Gootkin, the Sheriff's Office, and Gallatin County have a policy or practice of providing constitutionally inadequate training to Gallatin County police officers.

The district court dismissed some of Reed's claims at summary judgment and granted judgment as a matter of law for Defendants on the remaining claims after Reed presented

evidence at trial. Reed now appeals these decisions as well as the district court's exclusion of Reed's expert witness and denial of his motion to amend the complaint. Defendants cross-appeal the district court's denial of their motion for attorney fees. We reverse the dismissal of Reed's claims and the exclusion of his expert and dismiss for lack of jurisdiction Appellees' cross-appeal from the district court's attorney fee order.

## I. Factual and Procedural Background[1]

Reed is a volunteer with the Buffalo Field Campaign (the "Campaign"), a 501(c)(3) non-profit conservation organization that sends volunteers to observe and document the herding (also called "hazing") of buffalo in and near Yellowstone National Park. Pursuant to an interagency agreement, government personnel from a number of state and federal agencies carry out hazing operations as many as four or five times per week between December and July. The Campaign provides video footage and information about the hazing to news outlets and government agencies.

The hazing is accomplished using a variety of methods—horseback riders, cars, all-terrain vehicles, snowmobiles, and sometimes helicopters. On May 11, 2012, less than two weeks before the events giving rise to this lawsuit, information collected by Campaign volunteers was submitted as evidence in a federal environmental lawsuit challenging the use of helicopters in buffalo hazing. On May 14, 2012, the district court granted a temporary restraining

---

[1] Because the evidence presented at summary judgment and at trial are similar in all material respects, we draw on both deposition and trial testimony in this factual summary.

order in that case prohibiting the use of helicopters during hazing in the area.

On May 23, 2012, Reed and another Campaign volunteer, Kasi Craddock-Crocker, were in a vehicle attempting to observe the herding of buffalo east into Yellowstone National Park across Highway 191, which runs north and south on the west side of the Park. Agent Rob Tierney of the Montana Department of Livestock was in charge of the haze that day, and two Deputies from the Sheriff's Office—Deputy Lieurance and Deputy Mark Hernandez—provided law enforcement assistance.

As relevant to this appeal, the planned route for the haze was to travel with the buffalo east on Madison Arm Road—which runs roughly perpendicular to Highway 191—to the intersection with Highway 191; to herd the buffalo east over Highway 191; and then to continue eastward after crossing Highway 191, where the east-west road changes names to Conservation Lane. Roughly 0.3 miles north of the Highway 191-Conservation Lane intersection, the Madison River runs east to west. Both the east-west roads (Madison Arm Road and Conservation Lane) and the Madison River are in a relatively low-lying area. Another 0.3 miles north of the Madison River, the elevation noticeably increases. The divide between the southern low-lying area and the elevated area to the north is the east-west-running Madison Rim; at the point where Highway 191 intersects with Madison Rim, there is a 150-foot drop to the valley below. While the herders hoped to force the buffalo to cross Highway 191 south of the Madison River, Defendants produced evidence showing that the buffalo's actual path can be difficult to predict, and in hazes past, the buffalo had occasionally crossed the highway north of the river.

In order to prevent collisions between cars and buffalo, Agent Tierney's team temporarily blockaded a stretch of Highway 191. Agent Tierney set up the blockade of the northbound lane several hundred feet south of Conservation Lane, while Deputy Lieurance blockaded southbound traffic 0.9 miles north of Conservation Lane, at the intersection of Highway 191 and Ecology Lane. Ecology Lane crosses Highway 191 roughly 0.3 miles north of Madison Rim. Between Ecology Lane and Madison Rim, there is a significant turn in the highway. The blockade of southbound traffic was placed at a location relatively far from the planned haze route so that it would be visible to southbound traffic, including large trucks traveling at high speeds, in time for drivers to stop safely before reaching the downward incline around the bend.

Reed initially parked his vehicle just east of Highway 191 and just north of Conservation Lane in order to get a clear view of the buffalo as they crossed the highway. Reed had observed hazes from the same location taking the same route in the past. While Reed was parked in that spot, Agent Tierney approached the vehicle and advised Reed he was parked in the planned herding route and needed to move his vehicle. Reed's version of events is that Agent Tierney told Reed to head either north or south to get out of the way, while Defendants posit that Agent Tierney specifically told Reed three times that he needed to move either south of the northbound traffic blockade or north of the southbound traffic blockade.

After speaking with Agent Tierney, Reed and Craddock-Crocker drove north. Reed's version of events is that he drove about 0.6 miles north, exited Highway 191, and parked on a gravel road running parallel to the highway and

separated from the highway by a grass median. According to Reed, the parking spot was up the hill, roughly 0.3 miles north of the point where Highway 191 crosses the Madison River. Reed testified that he parked in this location "[b]ecause it was the farthest away place to be out of the way, but still be able to see the crossing and get a good count on the buffalo" and because he and Craddock-Crocker "thought [they] would be well out of the way." In contrast, Agent Tierney testified that Reed parked just seventy-five yards north of the Madison River.

After Reed drove north and parked, Agent Tierney radioed Deputy Lieurance, who had not yet blockaded the southbound lane, to tell him that Reed had not followed Agent Tierney's instructions to go north of the southbound blockade. Deputy Lieurance then called for a temporary halt to the haze and drove to Reed's location. After a brief verbal exchange, in which Deputy Lieurance asked Reed why he parked where he parked "when [he had] been instructed to go to a different place," and Reed protested that he was "not interfering with the haze" and "not breaking any law," Deputy Lieurance cited Reed for obstructing a peace officer or other public servant—a misdemeanor—pursuant to Mont. Code Ann. § 45-7-302. While issuing the citation, Deputy Lieurance said: "You've been instructed by law enforcement to do something. You didn't do it." The citation includes the following hand-written description: "was told by a law enforcement officer to be in a specific place during a governmental operation 3 times and still did not comply." At the time he issued the citation, no buffalo, horses, or riders were in Deputy Lieurance's sight and he knew neither the planned haze route for the day nor the specific location of the herd at that time.

After Deputy Lieurance issued the citation, Reed and Craddock-Crocker told Deputy Lieurance that it was "illegal" to tell them they had to go to a specific place if they were not actually obstructing anything. Deputy Lieurance told Reed that he would be arrested if he did not move outside of the blockaded area. Deputy Lieurance testified that he felt a sense of urgency because while he had called the horseback riders herding the buffalo to direct them to stop the haze, that did not mean the buffalo had stopped moving east; thus Deputy Lieurance needed to leave the scene and head north to blockade southbound traffic before the buffalo reached the highway. Reed then drove north to the highway's intersection with Ecology Lane, after which the highway was eventually blockaded and the buffalo crossed safely. From their location at the southbound blockade, Reed and Craddock-Crocker had no view of the buffalo crossing Highway 191. The parties disagree about exactly where the buffalo crossed the highway; the haze appears to have roughly followed the planned route, with Defendants positing that some buffalo may have crossed as far north as the Madison River. There is no evidence that any buffalo were north of the Madison River, let alone that any buffalo wandered up Madison Rim.

Video footage of the buffalo inside Yellowstone National Park shows that, later on the same day, members of the public were permitted to observe the same herding operation from roughly fifty yards away.

On July 10, 2012, the state prosecutor moved to voluntarily dismiss the obstruction charge against Reed after Reed's attorney provided a video and witness declarations documenting the citation. The state court dismissed the charges the following day.

Reed filed this lawsuit in the U.S. District Court for the District of Montana on March 18, 2013, asserting that Deputy Lieurance's conduct violated Reed's First and Fourth Amendment rights and related Montana constitutional rights, and that Gallatin County, the Sheriff's Office, and Sheriff Gootkin failed to train officers regarding Montana's obstruction statute and the First and Fourth Amendments.

The parties filed cross-motions for summary judgment and motions in limine. Ruling from the bench on July 23, 2014, the district court granted Defendants' motion for summary judgment on Reed's unreasonable seizure and failure-to-train claims, denied summary judgment on the First Amendment claims, and excluded Reed's police practices expert witness, Timothy Longo. On August 20, 2014, Reed moved to amend the complaint; the district court denied the motion on October 6, 2014.

The district court held a jury trial on Reed's First Amendment claims in January 2015. After Reed presented his case, Defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50, which the district court granted as to all remaining claims.

On January 20, 2015, Defendants filed a motion for an award of attorney fees. The district court subsequently denied the motion "without prejudice to renewal, if appropriate, following final disposition of all matters on appeal."

Reed now appeals the district court's summary judgment order, the denial of his motion to amend the complaint, the exclusion of his expert, and the grant of judgment as a matter

of law for Defendants. Defendants cross-appeal the district court's denial of their motion for attorney fees.

## II. Standards of Review

We review *de novo* the district court's orders granting summary judgment and judgment as a matter of law. *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 953, 960 (9th Cir. 2010). We review for abuse of discretion the district court's denial of Defendants' motion for attorney fees, *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1018 (9th Cir. 2015), denial of Reed's motion to amend the complaint, *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 1000 (9th Cir. 2007), and exclusion of Reed's expert, *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Id.* (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). The standard for judgment as a matter of law under Rule 50(a) "mirrors" the summary judgment standard. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). Thus, we view the trial evidence in the light most favorable to the non-moving party, and "[i]f conflicting inferences may be drawn from the facts

[presented at trial], the case must go to the jury," *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

## III. Discussion

## A. Unreasonable Seizure

First, Reed challenges the district court's grant of summary judgment for Defendants on his claim of unreasonable seizure in violation of the Fourth Amendment and its corollary in Art. 2, § 11 of the Montana Constitution.[2]

"It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under [42 U.S.C.] § 1983.'" *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)). Probable cause exists "when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Id.* "The analysis involves both facts and law. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." *Id.* Furthermore, if an officer

---

[2] "The Montana Constitution contains one of the strongest state constitutional protections of privacy in the Nation." *Friedman v. Boucher*, 580 F.3d 847, 856 (9th Cir. 2009). *See also* Hon. James C. Nelson, *Keynote Address: The Right to Privacy*, 68 Mont. L. Rev. 257, 259 (2007) ("This [privacy] right in Montana guarantees far greater protection from unreasonable searches and seizures than does the Fourth Amendment to the federal Constitution."), *quoted in Friedman*, 580 F.3d at 856. Because we find there is a genuine issue of material fact as to whether Reed's Fourth Amendment rights were violated, we need not also analyze Reed's unreasonable seizure claim under the state-law standard.

makes an arrest without probable cause, he or she may be entitled to qualified immunity as long as it is reasonably arguable that there was probable cause for the arrest.  *Id.*

The district court ruled that Deputy Lieurance had probable cause to arrest and cite Reed for the obstruction.[3] "A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process."  Mont. Code Ann. § 45-7-302(1).  In *City of Kalispell v. Cameron*, the Montana Supreme Court reversed a conviction for obstruction when the defendant had merely failed to follow an officer's instructions.  46 P.3d 46, 47 (Mont. 2002).  The *Kalispell* court explained that "an individual obstructing a peace officer must engage in conduct under circumstances that make him or her **aware that it is highly probable** that such conduct will impede the performance of a peace officer's lawful duty."  *Id.* (emphasis added); *see* Mont. Code Ann. § 45-2-101(35) ("A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is **aware that it is highly probable** that the result will be caused by the person's conduct." (emphasis added)).

---

[3] The parties do not dispute that there was a Fourth Amendment seizure when Deputy Lieurance issued the citation for obstruction and subsequently forced Reed to go to a different location under threat of being taken into physical custody.  We agree that there was a Fourth Amendment seizure, *see California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority."), and therefore the operative question is whether Deputy Lieurance had probable cause to believe that Reed had committed or was committing obstruction.

Additionally, while "an officer need not have probable cause for every element of the offense . . . when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)). In *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1498–99 (9th Cir. 1996), we applied *Gasho* to a California law regulating motorcycle helmets. The law allowed for the issuance of a traffic citation to a rider wearing a non-conforming helmet, but the rider needed "actual knowledge of the helmet's non-conformity to be guilty of violating the helmet law." *Id.* at 1499. We defined "specific intent" for purposes of probable cause analysis as "a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." *Id.* at 1499 n.7 (quoting *Specific Intent*, Black's Law Dictionary (6th ed. 1990)). Thus, the helmet law required specific intent—knowledge of a helmet's non-conformity— so the citing officer needed probable cause to believe the rider possessed this knowledge for the citation to comply with the Fourth Amendment.

Here, we find that the district court improperly invaded the province of the jury when, at the summary judgment stage, it resolved factual disputes material to the question of probable cause. Reviewing the record before the district court at summary judgment, we find that it is possible a jury could conclude that Deputy Lieurance had probable cause to believe Reed's presence at the observation point would likely obstruct the haze and also that Reed possessed the requisite specific intent.

Alternatively, a reasonable jury could conclude that Deputy Lieurance knew that Reed presented little to no risk of obstructing the operation while parked on the gravel road up the hill over half a mile from the planned route of the haze, and thus there was at best a low probability that Reed might "impede the performance of a peace officer's law duty." *Kalispell*, 46 P.3d at 47. There is evidence in the record suggesting that Deputy Lieurance had experience with hazes in the same location and he thus could have known that buffalo rarely, if ever, climb up Madison Rim. The record also clearly supports the need to stop traffic from driving on the highway near the haze, but the record is less supportive of the safety justifications for removing a parked car located off the highway. For one thing, there is no evidence suggesting that Defendants ever planned to blockade or routinely blockaded the gravel road; thus, when Deputy Lieurance issued the citation, Reed was not actually in violation of any road blockade. Defendants also portray the buffalo as wild, dangerous, and highly unpredictable animals, but Reed offered evidence rebutting this characterization. There is evidence showing that Reed had been permitted to observe past hazes from a much closer vantage point and also that onlookers were permitted to come within fifty yards of the same haze later that day. All of this calls into question whether it was reasonable for Deputy Lieurance to believe Reed's presence uphill and over fifty feet away from the haze, parked on a gravel road that was not currently or routinely blockaded, presented a safety concern. And at a minimum, a reasonable jury could conclude that because Deputy Lieurance did not personally know the route that the haze would take that day, he did not possess information sufficient to believe there was a high probability that Reed's observation from the parking spot would disrupt the haze.

As another possibility, even if a jury concluded Deputy Lieurance had probable cause to believe Reed was obstructing the haze, a jury could conclude Deputy Lieurance lacked probable cause to believe that Reed had the necessary specific intent to impede the haze. *See Easyriders Freedom F.I.G.H.T.*, 92 F.3d at 1498–99; *Kalispell*, 46 P.3d at 47. First, Reed had already relocated to a significant distance when requested to do so and told Deputy Lieurance he was "not interfering with the haze." Second, a reasonable jury could find Defendants' evidence lacks credibility and conclude that Agent Tierney never told Deputy Lieurance that he had instructed Reed to move either north or south of the road blockade. We note that at the time Agent Tierney allegedly instructed Reed to move north or south of the blockade, it is undisputed that the southbound blockade was not yet set up. Third, there is also evidence showing that Deputy Lieurance was familiar with Reed based on interactions at prior hazes. Thus, even if Deputy Lieurance held a genuine belief that Agent Tierney directed Reed to move north or south of the blockade, Deputy Lieurance may have also known that Reed knew parking at the observation point was not likely to obstruct the haze.

Moreover, a jury could find Deputy Lieurance issued the citation for one or more reasons that do not satisfy the Fourth Amendment. First, a jury could conclude that Deputy Lieurance's argument that Reed was "obstructing" the haze was pretextual, and that his real motivation in detaining and citing Reed was tied to the Campaign's recent lawsuit limiting the use of helicopters in hazing. Alternatively, there are some facts in the record tending to show that Deputy Lieurance, like the officer in *Kalispell*, issued the citation because of Reed's alleged refusal to follow an order, as

opposed to any genuine likelihood that Reed would obstruct the haze.  *See* 46 P.3d at 47.

"[T]he district court 'improperly weighed evidence favorable to [Reed] against other evidence presented . . . and failed to draw all reasonable inferences in [Reed's] favor.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (quoting *Krechman v. County of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013)).  Construing the facts in Reed's favor, we cannot conclude that as a matter of law, a reasonably prudent officer in Deputy Lieurance's situation would have had probable cause to believe Reed committed obstruction.  Thus, Defendants are not entitled to summary judgment on Reed's unlawful seizure claim.  *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (holding that "where genuine disputes of a material nature exist" regarding "the facts and circumstances within an officer's knowledge," summary judgment is inappropriate).[4]

---

[4] In addition, Deputy Lieurance is not entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  An officer sued for unlawful arrest is entitled to qualified immunity if "it is *reasonably arguable* that there was probable cause for arrest."  *Rosenbaum*, 663 F.3d at 1076.

"For purposes of qualified immunity, we resolve all factual disputes in favor of the party asserting the injury." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).  In this case, the factual disputes that preclude a finding that, as a matter of law, Deputy Lieurance acted with probable cause also preclude a finding that he had arguable probable cause.  *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("[I]f the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for . . . federal false arrest claims.").

## B.  Failure to Train

Second, we consider Reed's challenge to the dismissal of his failure-to-train claim against Sheriff Gootkin, the Sheriff's Office, and Gallatin County.  Although the parties moved for summary judgment on this claim, the district court did not apply the summary judgment standard set out in Rule 56, nor did the court consider the sufficiency of Reed's evidence.  Instead, the district court dismissed the failure-to-train claim for failure to satisfy the pleading standard set out in Fed. R. Civ. P. 12(b)(6), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Defendants never filed a Rule 12 motion before the district court, and Defendants' summary judgment briefing did not invoke Rule 12.  Thus, we consider the district court's decision a *sua sponte* Rule 12 dismissal for failure to state a claim.

"Although '[a] trial court may dismiss a claim sua sponte under [Rule 12(b)(6)],' the court must give notice of its intention to dismiss and 'afford plaintiffs "an opportunity to at least submit a written memorandum in opposition to such motion."'" *Lee v. City of Los Angeles*, 250 F.3d 668, 683 n.7 (quoting *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (first quotation) and *Wong v. Bell*, 642 F.2d

---

Furthermore, the Fourth Amendment principles at issue here and the Montana Supreme Court's interpretation of the obstruction statute were all clearly established at the time.

The Court also notes that even if Deputy Lieurance were entitled to qualified immunity on Reed's Fourth Amendment claim, Montana courts do not afford defendants qualified immunity for claimed state constitutional violations. *Dorwart v. Caraway*, 58 P.3d 128, 140 (Mont. 2002).

359, 362 (9th Cir. 1981) (second quotation)). Even if a court does first provide proper notice, "we will uphold a *sua sponte* dismissal without leave to amend only where the plaintiff 'cannot possibly win relief.'" *Id.* (quoting *Wong*, 642 F.2d at 362).

Here, the district court did not first provide Reed notice and an opportunity to respond before dismissing the failure-to-train claim for failure to satisfy Rule 12(b)(6). Therefore, we reverse the dismissal of this claim.[5]

## C. Exclusion of Reed's Expert Witness

Reed argues the district court abused its discretion in excluding the testimony of Reed's police practices expert—Timothy Longo, the Police Chief for the City of Charlottesville, Virginia. Chief Longo's testimony relates

---

[5] Moreover, the district court denied Reed's subsequent motion to amend the complaint in order to expand the failure-to-train allegations. The district court reasoned that Reed failed to show "good cause" for modifying the scheduling order, as required under Fed. R. Civ. P. 16(b)(4), and did not comment on *Lee*'s requirement that a motion to amend in such circumstances should be granted unless the plaintiff "cannot possibly win relief." *Lee*, 250 F.3d at 683 n.7 (quoting *Wong*, 642 F.2d at 362). After a thorough review of the record before the district court at the time, we find it impossible to conclude that Reed "cannot possibly win relief" on his failure-to-train claim. Therefore, even if the district court had given Reed proper notice, Reed would still be entitled to amend the complaint to remedy any deficiency in the complaint's failure-to-train allegations.

The district court never applied the Rule 56 standard to determine whether Defendants are entitled to summary judgment on Reed's failure-to-train claim. We decline to do so without first affording the district court a chance to consider this question.

primarily to the failure-to-train claim, which the district court dismissed prior to addressing the motion to exclude. Therefore, we find it appropriate to allow the district court to reconsider the order excluding Chief Longo's testimony given that it may be more relevant in the context of a revived failure-to-train claim.

Furthermore, "[a] district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011) (quoting *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004)). While the district court may have had a proper basis to exclude portions of the expert report in its discretion, we find multiple "manifestly erroneous" misstatements of law and fact in the district court's order. *See United States v. Cazares*, 788 F.3d 956, 976 (9th Cir. 2015) ("A district court's rulings on the admissibility of expert testimony . . . will be reversed only if 'manifestly erroneous.'" (quoting *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000))).

First, the district court stated that an expert may only rely upon evidence that is in the record or that is "of the sort that any expert would rely on," including, for example, the number of feet in a mile or the average body temperature of an adult human being. Based on the use of these examples, it appears that the district court believed it is only permissible for an expert to rely on facts not admitted in the record if those facts are judicially noticeable under Fed. R. Evid. 201. This is contrary to Fed. R. Evid. 703, which allows an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed" as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."

In such circumstances, the facts the expert relies on "need not be admissible for the opinion to be admitted." *Id.*

Second, the district court found Chief Longo's report objectionable for commenting on "the ability or perhaps nonability of others to do their job," because such comments functioned "at least indirectly, if not absolutely directly, [to] raise questions about the credibility of persons and parties to the lawsuit." While "[a]n expert witness is not permitted to testify specifically to a witness' credibility," *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989), we know of no rule barring expert testimony because it might indirectly impeach the credibility of an opposing party's testimony. Indeed, the key question for Reed's failure-to-train claim is whether Defendants performed their job functions in line with Fourth Amendment standards. Reed is permitted to present expert testimony critical of Defendants' job performance or in conflict with Defendants' testimony as long as the expert's testimony complies with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the Federal Rules of Evidence.

Third, the district court stated that Chief Longo's report "unfortunately contains what are appropriately being characterized as disparaging comments on the conduct of non-parties. Specifically in paragraph 165 there's criticism of the county prosecutor made. That is plainly over the top in terms of the balanced view to be expressed by an expert." Reed correctly points out that neither in paragraph 165 nor elsewhere in his report does Chief Longo criticize the county

prosecutor.[6]  It appears that the district court's frustration about this "criticism" of the county prosecutor materially colored its view of the validity of the report as a whole.[7]

Clearly, the district court need not permit Chief Longo to present legal opinions.  *See, e.g.*, *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.").  But a police practices expert may provide helpful testimony regarding whether there was a failure to train without veering into improper legal opinions.  *See, e.g.*, *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004) (reversing a district court's grant of summary judgment for a defendant on a failure-to-train claim where the district court held the plaintiff provided no evidence of a policy or custom, but the plaintiff had in fact submitted a declaration from a law enforcement expert who opined that the defendant police department's practices amounted to a failure to train).

Because the district court abused its discretion in excluding the entirety of Chief Longo's testimony, we reverse that decision for reconsideration under the proper legal standard.

---

[6] In fact, paragraph 165 states Chief Longo's opinion that the Gallatin County prosecutor's office's refusal to prosecute previous obstruction cases supports the conclusion that the Sheriff's department is regularly issuing baseless obstruction citations.

[7] We are also concerned by other statements in the district court's order that suggest that the court excluded the expert report in part because the court "simply . . . disagree[d] with the conclusions of the expert," which is not a proper basis for excluding such testimony.  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998).

## D. First Amendment Claims

## 1. Lack of Notice

Reed argues that the district court committed reversible procedural error in granting judgment as a matter of law on Reed's First Amendment and related state claims without first providing Reed notice of the grounds for the decision.[8]

In *Waters v. Young*, we held that if a motion for judgment as a matter of law pursuant to Rule 50 does not specify the evidentiary holes in the non-moving party's case, the court has a duty to inform the non-moving party of those deficiencies and provide an opportunity to correct them. 100 F.3d 1437, 1440–42 (9th Cir. 1996). "These obligations reflect a major purpose of the motion for judgment as a matter of law, which is 'to call the claimed deficiency in the evidence to the attention of the court *and to opposing counsel* at a time when the opposing party is still in a position to correct the deficit.'" *Id.* at 1441 (quoting *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1429 (9th Cir. 1986)). The *Waters* court relied on the Advisory Committee Note to Rule 50, which guides our interpretation of Rule 50, and which states that "[i]n no event . . . should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact." Fed. R. Civ. P. 50 advisory committee's note to 1991 amendment. Though the plaintiff in *Waters* was pro se, we explained that

---

[8] Reed's speech-related claims include: (1) unreasonable restriction of First Amendment speech, press, and assembly rights; (2) unreasonable restriction of Montana constitutional speech, press, and assembly rights; and (3) First Amendment retaliation.

"[t]he extent of a party's legal expertise is irrelevant for purposes of [Rule 50]," and thus the *Waters* holding "applies in all cases, including those in which parties are represented by highly qualified counsel." *Waters*, 100 F.3d at 1442. Building on *Waters*, we held in *Summers v. Delta Air Lines, Inc.*, that a plaintiff was "neither apprised of the alleged deficiencies in her proof nor given the opportunity to cure such deficiencies" when the district court granted the defendants' Rule 50(a) motion "on wholly different grounds" from those matters raised in the defendants' motion. 508 F.3d 923, 927–28 (9th Cir. 2007).

Here, after Reed presented evidence, Defendants made a Rule 50 motion. Reed reports that in ruling for Defendants as a matter of law, the district court read from a detailed written statement that apparently was prepared in advance. Not surprisingly, the court's pre-written reasons for granting judgment as a matter of law did not correspond with the arguments in Defendants' oral motion made just minutes earlier.[9] Reed was "sandbagged by a decision on grounds not

---

[9] Defendants provided three arguments in their Rule 50 motion: (1) because Agent Tierney, and not Deputy Lieurance, established the boundaries of the highway blockade, Deputy Lieurance cannot be held personally responsible for enforcing those boundaries; (2) the evidence was "clear" that Deputy Lieurance's motivation for threatening to take Reed to jail was not to chill his First Amendment rights, but rather to get Reed to move out of the way because there was an urgent need for Deputy Lieurance to leave the scene to begin blockading the highway; and (3) Reed failed to produce evidence that would allow imposition of punitive damages. The district court's order granting judgment as a matter of law was based on wholly distinct reasons: (1) in the court's view, the facts were "undisputed" in support of a finding as a matter of law that the 0.9-mile blockade of the highway was "reasonable for safety reasons" and left open alternatives for Reed to observe the haze; (2) because the court had previously decided there was probable cause to cite Reed for

properly noticed," *id.* at 927; this was reversible error, *id.* at 927–28.

## 2. Improper Factfinding

Reed also argues that Defendants were not entitled to judgment as a matter of law on the merits.  We agree.

As explained above, "[j]udgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion."  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002)).  "Issues of credibility belong to the trier of fact."  *LaLonde*, 204 F.3d at 963 (Trott, J., concurring in part and dissenting in part).  The parties' briefing is replete with "facts [that] are disputed, and the disputed facts here should have been submitted to the jury."  *Id.*

First we examine Reed's claim that in citing Reed for obstruction and subsequently forcing Reed to leave his parking spot on the gravel road, Deputy Lieurance unreasonably restricted the exercise of Reed's First Amendment rights (and corollary Montana constitutional

---

obstruction, Reed had no right to remain parked on the gravel road, and therefore Reed's request to remain there was not a constitutionally-protected activity; (3) there was insufficient evidence to find a but-for causal relationship between the threat of jail and a desire to chill Reed's exercise of First Amendment rights; and (4) though neither party raised the question of qualified immunity, the court held that alternatively, Deputy Lieurance was entitled to qualified immunity on both First Amendment claims.

rights).[10]  At the time of the citation, Reed was located on a public street, which is a quintessential public forum, *Frisby v. Schultz*, 487 U.S. 474, 480 (1988), and he was engaging in the First Amendment-protected activity of observing a government operation, *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a "First Amendment right to film matters of public interest"—in that case, police actions during a public demonstration).  The government may impose reasonable time, place, and manner restrictions on expressive activity in a public forum.  *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 858 (9th Cir. 2004).  A restriction is "reasonable" if: (1) it is content-neutral; (2) it is narrowly tailored to serve a significant government interest; and (3) it "leave[s] open ample alternative channels for communication of the information."  *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 897 (9th Cir. 2008).

Here, in ruling that Defendants were entitled to judgment as a matter of law on this claim, the district court improperly resolved numerous factual disputes reserved for the jury.  For example, the district court quite inexplicably applied a "presumption" that Deputy Lieurance obeyed the law.  The district court also found it was "undisputed" that the presence of Reed's vehicle parked on the gravel road presented a safety risk and interfered with the hazing operation; the district court credited Defendants' evidence regarding the buffalo's

---

[10] The district court applied only the federal constitutional framework for unreasonable restrictions on speech, press, and assembly rights, and the parties do not argue that there is any meaningful difference between Reed's rights under the federal and state constitutions.  Therefore, the Court assumes for purposes of this motion that the same analysis applies to both claims.

dangerousness and unpredictability. And the district court found it "undisputed" that Agent Tierney directed Reed not simply to go north or south from Conservation Lane, but to go north of the southbound blockade or south of the northbound blockade. Puzzlingly, the court also determined that the fact that later on the same day observers were permitted to come within fifty yards of the haze was "of no reasonable evidentiary value in determining the issues in this case." Lastly, the court found that Reed "was given the opportunity, at least at the south end of this no-drive zone, to . . . view the haze operation as it crossed the highway."

Based on these findings—which can only reasonably be understood as factual findings and credibility determinations—the district court concluded that the restriction on Reed's First Amendment activities was reasonable as a matter of law because it was justified by safety reasons, limited in time and location, and left open a reasonable alternative. The court did not explicitly address the question of content-neutrality.

Upon close review of the record, we find that contrary to the district court's conclusions, Reed presented evidence sufficient to create material factual disputes as to all three relevant inquiries: content neutrality, narrow tailoring to a significant government interest, and the existence of alternatives. *See Kuba*, 387 F.3d at 858 (explaining that a restriction on First Amendment activity is unreasonable if it fails to satisfy any one of these three prongs).

Regarding content neutrality, as noted above, a jury could reasonably infer that Deputy Lieurance's safety justification was pretextual, and in fact he sought to prevent Campaign volunteers from observing the haze. *See Ward*, 491 U.S. at

791 ("The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration." (citation omitted)). As to narrow tailoring, Reed presented evidence sufficient to show that there was no genuine safety or operational reason to exclude him from parking on the gravel road, and therefore, the restriction was not narrowly tailored to a significant government interest. And it is also not clear from the record that after being cited for obstruction, there was any alternative observation point open to Reed from which he was able to view the buffalo crossing the road. We certainly cannot conclude as a matter of law that the alternative observation opportunities in this case were "ample." *Ward*, 491 U.S. at 791. Thus, Defendants were not entitled to judgment as a matter of law on Reed's unreasonable restrictions claim.

Second, Reed presented a First Amendment retaliation claim at trial. Reed presented sufficient evidence for a jury to conclude that Deputy Lieurance's "desire to chill [Reed's protected activity] was a but-for cause of" the threat to take Reed to jail. *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013); *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) (finding a First Amendment retaliation claim may lie "when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences"). Reed also presented evidence "demonstrat[ing] that [Deputy Lieurance's threat] would chill a person of ordinary firmness from future First Amendment activity." *Ford*, 706 F.3d at 1193. Therefore, the district should have presented Reed's First Amendment retaliation claim to the jury.

## E.  Attorney Fees

"Under 28 U.S.C. § 1291, this court has jurisdiction to hear appeals of 'final decisions' of the district court." *Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir. 1999). "A ruling is final for purposes of § 1291 if it (1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter." *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 846 (9th Cir. 2009) (quoting *Nat'l Distribution Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 433 (9th Cir. 1997)). The district court clearly intended to revisit the question of an award of attorney fees, if appropriate, following the resolution of this appeal.  Because the district court made no "final decision" on whether Defendants are entitled to attorney fees, *Wakefield*, 177 F.3d at 1160, we lack jurisdiction to review the district court's denial without prejudice of Defendants' fees motion.

## Conclusion

For the reasons stated above, we reverse the district court's (1) dismissal at summary judgment of Reed's Fourth Amendment and related state claims; (2) *sua sponte* Rule 12 dismissal of Reed's failure-to-train claim; (3) exclusion of Reed's expert; and (4) judgment as a matter of law on Reed's First Amendment and related state claims.  We do not disturb the district court's denial of Defendants' motion for attorney fees. Costs shall be taxed against Defendants-Appellees. The case shall be reassigned to a different district judge on remand.  *See Velazquez*, 793 F.3d at 1030.

**DISMISSED in part, REVERSED in part, and REMANDED.**