NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 22 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KLAMATH DRAINAGE DISTRICT,

Defendant - Appellant.

No. 23-3404

D.C. No.
1:22-cv-00962-CL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Mark D. Clarke, Magistrate Judge, Presiding

Submitted January 17, 2025[**]
San Francisco, California

Before: H.A. THOMAS and MENDOZA, Circuit Judges, and BOLTON, District
Judge.[***]

Klamath Drainage District ("KDD") appeals the district court's grant of

summary judgment for the United States Bureau of Reclamation ("Reclamation")

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

and injunction in a suit for breach of contract. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court.

We review de novo the district court's contract interpretation, *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 39 F.4th 1113, 1118 (9th Cir. 2022), and grant of summary judgment. *Friends of Animals v. U.S. Fish and Wildlife Serv.*, 28 F.4th 19, 28 (9th Cir. 2022). We review the grant of a permanent injunction for abuse of discretion. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). A district court abuses its discretion "if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Reed v. Lieurance*, 863 F.3d 1196, 1208 (9th Cir. 2017) (citation omitted).

Since 1905, Reclamation has developed and operated the Klamath River Basin Project (the "Project"), a series of complex irrigation works in southern Oregon. *Klamath Irrigation Dist. v. Bureau of Reclamation*, 48 F.4th 934, 938–41 (9th Cir. 2022). In 1943, Reclamation and KDD executed a contract (the "Contract") for delivery of excess water from the Project pursuant to Reclamation's authority under the Warren Act, 43 U.S.C. §§ 523–525.

1. The Contract's terms authorize Reclamation to control KDD's appropriation of water from the Klamath River. "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath Water Users*

*Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) (citation omitted). "Whenever possible, the plain language of the contract should be considered first." *Id.* (citation omitted). We agree with the district court that the Contract's plain language, given its ordinary meaning, authorizes Reclamation to control KDD's diversions from the Klamath River and provides for Reclamation to administer the Project through reasonable rules and regulations.[1] KDD "agree[d] to observe such rules and regulations." We find no language in the Contract requiring an allocation of water when there is a water shortage.[2]

2. KDD violated a duty or obligation arising under the Contract when it diverted water in contravention of Reclamation's plans. A party is liable for breach of contract when it violates "an obligation or duty arising out of [a] contract." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

---

[1] KDD argues that a water permit granted to it by the Oregon Water Resources Department in 1977 allows KDD to divert Klamath River water unrestrained by the Contract's limitations. We disagree. The plain language of the Contract prohibits KDD from diverting water in contravention of Reclamation's plans. Reclamation may sue for breach of contract to enjoin unauthorized diversions.

[2] Notably, the Contract superseded a 1921 contract, wherein Reclamation had been required to supply a minimum amount of water.

Articles 14, 24, and 35 of the Contract provide Reclamation with authority to determine how much water to allocate to KDD in times of drought. Exercising this contractual authority to allocate Project water, Reclamation issued Operations and Drought plans in 2022. In these plans, Reclamation considered the "ongoing extreme drought conditions for the third consecutive year afflicting the Klamath Basin" and determined that no water would be available to KDD that year. KDD had a contractual duty to adhere to Reclamation's allocations and not divert water from the Klamath River, which KDD does not dispute it disregarded.

Reclamation is entitled to summary judgment because "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and KDD violated its contractual duty.

3. The district court did not abuse its discretion when it permanently enjoined KDD from diverting water in contravention of Reclamation's plans. A court must find the following factors to issue a permanent injunction as a remedy for breach of contract: "(1) that [plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014)

(citation omitted). "When the government is a party," factors two and three "merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

On the first factor, the district court properly found two types of irreparable injury for (1) undermining Reclamation's ability to operate the Project in accordance with its competing obligations, and (2) risking irreparable harm to endangered species listed under the Endangered Species Act ("ESA"). On the second factor, the district court properly found the effects of KDD's unauthorized diversions could not be remedied by damages. Reclamation's loss of operational control is not quantifiable in monetary terms and "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 785 (9th Cir. 1995) (alteration in original) (citation omitted).

On the final, merged factors, the district court was within its discretion to find the balance of equities weighed in favor of enjoining KDD's unauthorized diversions. Reclamation's ability to regulate the Project affects ESA-listed species, Native American tribes, and other irrigators and stakeholders. *Klamath Irrigation Dist.*, 48 F.4th at 939–40 (citing *United States v. Adair*, 723 F.2d 1394, 1414 (9th Cir. 1983); *Parravano v. Babbitt*, 70 F.3d 539, 541–43 (9th Cir. 1995));

23-3404

*Baley v. United States*, 942 F.3d 1312, 1321–22 (Fed. Cir. 2019). The harm to KDD in barring its unauthorized diversions is a consequence of the priority of Project obligations and the harsh fact that there is not enough water to satisfy all demands. That consequence is not a harm that Reclamation caused, nor is it one the parties can avoid without violating superior obligations.

**AFFIRMED.**[3]

---

[3] We deny KDD's request for judicial notice. Dkt. No. 14.