Kenneth Christopher CURNOW, a minor, by and through his guardian ad litem, Sandra CURNOW; Ken Curnow; Sheila Efflandt; Sandra Curnow, as administratrix of the estate of Steven Murray Curnow, deceased; Cris Curnow; and Sandra Curnow, as an individual, Plaintiffs–Appellees,

v.

The RIDGECREST POLICE, a municipal law enforcement agency; the City of Ridgecrest, a municipal corporation; the State of California, a sovereign state; the County of Kern, a municipal corporation; Edward John Luarca, a/k/a E.J. Luarca; Stephen Compton; Randy Gene Bias; Jeffrey Krueger; Kurt Fowler; Jerry Linenkugel; Garry Davis; Chris Davis; Bob Pratt; and Edward R. Jagels, Defendants–Appellants.

No. 90–15314.

United States Court of Appeals, Ninth Circuit.

Submitted May 16, 1991 *.

Decided Dec. 26, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Dorothy Crisp, Wayne K. Lemieux, Westlake Village, Cal., for defendants-appellants.

Carl K. Osborne, Los Angeles, Cal., and Elliott L. Aheroni, Encino, Cal., for plaintiffs-appellees.

Before ALARCON and RYMER, Circuit Judges, and McDONALD **, District Judge.

McDONALD, District Judge:

Defendants appeal the district court's denial of their motion for summary judgment based upon qualified immunity. We affirm.

Plaintiffs-appellees, the estate of Steven Curnow, his parents, and his children, filed this action in the United States District Court for the Eastern District of California against the defendants-appellants, City of Ridgecrest police officers. The claims

** The Honorable Alan A. McDonald, United States Judge for the Eastern District of Wash- ington, sitting by designation.

which are the subject of this appeal are brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.

After plaintiffs-appellees filed their third amended complaint, defendants-appellants moved for summary judgment on the basis of qualified immunity. The district court denied defendants-appellants' motion on the basis that genuine issues of material facts precluded issuance of summary judgment.

According to defendants-appellants, on April 5, 1986, at approximately 10:00 p.m. the decedent, Steven Curnow, and Mercedes Taylor were standing in the kitchen of Curnow's home when a window was shattered by an object from outside the home. Curnow and Taylor both believed that someone had shot at them and therefore, called the police department. As plaintiffs-appellees admit, Curnow then retrieved an HK–91, a semi-automatic rifle, from the closet.

Upon arrival at the scene, the police questioned the occupants of a house next to Curnow's before proceeding to Curnow's residence.

After examining the broken window and determining that no shots were fired, the police were allowed to enter the house and continue the investigation. Curnow showed Officer Randy Bias the HK–91 and asked Bias if it was legal to have such a weapon. Bias informed Curnow that it was.

During the investigation Bias learned that Taylor had been threatened by her ex-husband. After the officers left the scene, Officer Edward Luarca went to Taylor's ex-husband's residence to question him. Taylor's ex-husband denied any involvement with the breaking of the window.

Upon writing his report of the incident, Officer Bias was ordered by his supervisor to contact the neighbors at 421 Florence to determine if they saw anything or knew anything about the window-breaking incident.

On the following evening, April 6, 1991, Officer Bias interviewed the neighbors regarding any noise they might have heard or any other disturbances of the night before. When Bias left the neighbor's home he heard shouting coming from Curnow's home. He walked across the common driveway, looked into Curnow's window and allegedly saw Curnow bent over Mercedes Taylor slapping and shaking Taylor and pleading with her to wake up. Bias then returned to the patrol car and called for backup. Officer Luarca arrived at the scene, went to the same window that Officer Bias had looked through and saw the same thing that Bias had seen.

Bias and Luarca both decided they needed a supervisor and additional backup. Bias radioed for a supervisor and backup. Soon thereafter, Officer Krueger and Sergeant Compton arrived at the scene. Compton, the commanding officer, viewed the scene and allegedly observed the HK–91 laying at the side of the decedent. Purportedly there was great concern among the officers because of the nature of the HK–91 weapon.

Compton then devised a plan of entry into Curnow's home. The plan involved stationing Luarca at the window and having him aim his weapon at Curnow. In the event Curnow picked up the rifle in a threatening manner, Luarca was to take appropriate action. The other three officers were to enter through the front door by breaking down the door and attempt to rescue Taylor and prevent Curnow from using the HK–91.

The plan allegedly went awry in that the first attempt to break down the door failed. When Curnow heard persons attempting to break down the front door, he allegedly reached for the HK–91. The police then made a second attempt to break down the door which succeeded. Because Curnow had already picked up the weapon, Luarca, who was stationed at the window with his weapon trained on Curnow, yelled "freeze, police". At that moment, Compton and Krueger came in through the front door. Curnow raised his weapon and Luarca fired in defense of the other officers.

As a result of the first shot, Curnow was seriously wounded. While carrying his rifle, Curnow ran into the kitchen, opened the kitchen door and exited the house. Upon exiting the house, he was in possession of the HK–91. As Curnow exited the house he turned and pointed the weapon at Officer Luarca. Officer Luarca then fired a second shot which hit and killed Curnow.

The "statement" of Mercedes Taylor in opposition to the motion for summary judgment contradicts the affidavits submitted by the police officers. According to Taylor's statement, Curnow was not hitting her but was simply holding her in his lap. She said that Curnow did not reach for his gun before the police shot him, and that it appeared Curnow had been shot in the back by the first shot. She further stated that the gun was unloaded and that he grabbed it by the muzzle as he attempted to flee the residence.

### I.

■ This court has jurisdiction over an appeal from a denial of a motion for summary judgment based upon qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We review *de novo* the district court's denial of summary judgment. *White by White v. Pierce County*, 797 F.2d 812, 814 (9th Cir.1986).

### II.

■ Defendants object to the district court's consideration of Mercedes Taylor's statement submitted by the plaintiff in opposition to the defendant's motion for summary judgment. Kristin Coil, a shorthand reporter, took Taylor's statement on May 6, 1986. Taylor was duly sworn to tell the truth by Coil. Defense counsel were not present when plaintiff's counsel questioned Taylor. Coil transcribed the questions and Taylor's responses. The transcript was signed by Coil but not by Taylor.

■ In opposing a summary judgment motion, the nonmoving party need not produce evidence in a form that would be admissible at trial. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A summary judgment motion may be opposed by any of the evidentiary materials listed in Rule 56(c) of the Federal Rules of Civil Procedure, although the mere pleadings themselves are not sufficient. *Id.* Rule 56(c) provides that the court may consider pleadings, depositions, answers to interrogatories, admissions and affidavits in deciding a summary judgment motion. Fed.R.Civ.P. 56(c).

In *Hoover v. Switlik Parachute Co.,* 663 F.2d 964 (1981), we admitted depositions for the purpose of a summary judgment motion against a party who had not been joined at the time the depositions were taken. *Id.* at 966. In that case, the plaintiff joined Switlik as a co-defendant after depositions had already been taken by a prior defendant. *Id.* The court prohibited Switlik from deposing any witnesses whose depositions had already been taken by the prior defendant. *Id.* at 965–66.

We ruled that the documents could not be admitted as Rule 56(c) depositions because Switlik had no opportunity to cross-examine the deponents. *Id.* at 966. Nevertheless, we held that the documents met the requirements for Rule 56(c) affidavits since they were made on personal knowledge and set forth facts in evidence. *Id.* Although the documents were inadmissible as depositions, we ruled that the district court did not err in considering the deposition testimony as the substantial equivalent of an affidavit under Rule 56(c). *Id.* at 967.

*In re Sunset Bay Associates,* 944 F.2d 1503 (9th Cir.1991), we concluded that a witness's statements taken in question and answer form, which had neither been subject to cross-examination nor signed, were admissible under Rule 56(c). *Id.* at 1510. It is unclear from the facts set forth in *In re Sunset Bay Associates* whether the party objecting to the admission of the statement had been notified of the deposition or was present at the time it was taken. We explained our holding in *In re Sunset Bay Associates* as follows:

> [T]he logic of *Hoover* implies that an unsigned deposition should be admissible where, as here, the deponent was *sworn.* The approach of *Hoover* is pragmatic, looking to see if the deposition testimony is at least as reliable as an admissible affidavit. Because there is no reason to believe that the sworn answers to questions are less reliable than an affidavit, to the extent that the content of the deposition testimony is otherwise admissible, that testimony should be admissible on summary judgment.

*Id.* at 1510.

The district court properly considered Taylor's statement pursuant to Rule 56(c) because her answers to the questions were given under oath. Notwithstanding the fact that the statement was unsigned, it was at least as reliable as an affidavit.

### III.

Defendants-appellants moved for summary judgment on the basis of qualified immunity. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages [in a section 1983 action] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ This "clearly established law" test requires more than an alleged "violation of extremely abstract rights." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. In other words, "in the light of preexisting law the unlawfulness must be apparent." *Id.*

■ There is no question that the apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). The nature and the quality of the intrusion on the individual's Fourth Amendment inter-

ests must be balanced against countervailing governmental interests. *Id.* at 8, 105 S.Ct. at 1699; *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). The court's inquiry is therefore whether the totality of the circumstances (taking into consideration the facts and circumstances of the particular case; including the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether he is actively resisting arrest or attempting to evade arrest by flight) justified the particular type of seizure. *Tennessee v. Garner*, 471 U.S. at 8–9, 105 S.Ct. at 1700; *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene...." *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. at 1872.

■ At the time Steven Curnow was shot, it was recognized that an officer could use deadly force to effect the arrest of a fleeing felon if, under the circumstances, he reasonably believed such force was necessary to protect himself or others from death or serious physical harm. *Tennessee v. Garner*, 471 U.S. at 11, 105 S.Ct. at 1701; *Ting v. United States*, 927 F.2d 1504 (9th Cir.1991).*** Under Taylor's version of the shooting, the police officers could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time. Thus, viewing the evidence in the light most favorable to the nonmoving party, the defendants-appellants are not entitled to qualified immunity.

## IV.

■ Defendants-appellants finally claim the district court erred in not dismissing claims made by Curnow's parents and children. Defendants-appellants argue that the recent Supreme Court case of *Graham v. Connor, supra,* mandates that excessive force claims be brought under the Fourth Amendment. There is no mistaking the holding of *Graham v. Connor:*

> Today we make explicit what was implicit in *Garner's* analysis, and hold that all law enforcement officers have used excessive force—deadly or not—in the course of the arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provided an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. [footnote omitted]

*Id.* 490 U.S. at 395, 109 S.Ct. at 1871.

While the person who claims excessive force was directed at him or her can only raise a fourth amendment claim, a parent who claims loss of the companionship and society of his or her child, or vice versa, raises a different constitutional claim. The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child, *see Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir.1986); *Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir.1985), and that a "child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest," *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). Thus, *Graham v. Connor* does not bar the parents' and children's due process claims. The district court recognized these authorities and properly denied defendants-appellants' motion for summary judgment based thereon.

***

*** While *Ting* was decided in 1991, the shooting which gave rise to the excessive force claim therein occurred on May 12, 1984. Accordingly, *Ting's* recognition of clearly established law regarding the use of deadly force to effect an arrest is relevant to the instant shooting which occurred in 1986.

The order of the district court is AF-FIRMED.