**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL EASLEY; STEPHANIA SESSION,

*Plaintiffs-Appellants*,

v.

CITY OF RIVERSIDE; SERGIO DIAZ; SILVIO MACIAS; DOES, 1 TO 10, inclusive,

*Defendants-Appellees.*

No. 16-55941

D.C. No. 5:14-cv-00117-TJH-SP

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

Argued and Submitted February 6, 2018
Pasadena, California

Filed May 18, 2018

Before: Consuelo M. Callahan and Jacqueline H. Nguyen, Circuit Judges, and Robert W. Pratt,* District Judge.

---

* The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

Opinion by Judge Callahan;
Dissent by Judge Pratt

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's grant, on summary judgment, of qualified immunity to a police officer in a 42 U.S.C. § 1983 action alleging that the officer used excessive force when he shot plaintiff three times following a traffic stop.

The panel first held that the district court did not err by raising the issue of qualified immunity sua sponte and addressing it on summary judgment because the district court retains this authority and because defendant raised and preserved qualified immunity as a defense. On the merits, the panel held that the district court correctly granted qualified immunity and summary judgment in defendant's favor because his application of deadly force was objectively reasonable under the Fourth Amendment. The panel noted that based on the undisputed facts, a reasonable officer may have reasonably feared that plaintiff had a gun and was turning to shoot him.

Dissenting, District Judge Pratt stated that he perceived genuine, material factual disputes in the record that the district court and the majority had either improperly

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

purported to resolve or improperly ignored. Judge Pratt would reverse the summary judgment and remand for further proceedings.

## COUNSEL

Dale K. Galipo (argued) and Hang D. Le, Law Offices of Dale K. Galipo, Woodland Hills, California, for Plaintiffs-Appellants.

Alana H. Rotter (argued) and Timothy T. Coates, Greines Martin Stein & Richland LLP, Los Angeles, California; John M. Porter, Lewis Brisbois Bisgaard & Smith LLP, San Bernardino, California; Neil Okazaki, Deputy City Attorney; Gary Geuss, City Attorney; Office of the City Attorney, Riverside, California; for Defendants-Appellees.

## OPINION

CALLAHAN, Circuit Judge:

On December 22, 2011, Michael Easley ("Easley") was shot three times by Officer Silvio Macias ("Macias") following a traffic stop. Based on his resulting injuries, which include permanent physical disability and paralysis, Easley filed this action alleging that Macias violated 42 U.S.C. § 1983 through the use of excessive force. The district court sua sponte ordered an evidentiary hearing regarding Macias' entitlement to qualified immunity. Following the two-day hearing, the district court ruled Macias was entitled to qualified immunity and granted summary judgment in his favor. Easley appeals, challenging the district court's sua sponte grant of summary judgment as

procedurally impermissible and arguing that the record construed in the light most favorable to Easley reflects that genuine issues of material fact remain as to Macias' entitlement to qualified immunity. We affirm because the district court properly considered qualified immunity sua sponte and because, viewing the record in the light most favorable to Easley, Macias' use of deadly force was objectively reasonable under the Fourth Amendment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.

On the night of December 22, 2011, at around 8:20 p.m., Macias and his partner, Officer Anthony Watkins ("Watkins"), were on patrol in the 12th Street area of Riverside, California, in their police car. They noticed a pink Chevrolet Monte Carlo with what appeared to be illegally-tinted windows. Macias thought he recognized the driver, Stephania Session ("Session"), from a prior encounter. Easley, her husband, was a passenger in the car. As the Chevrolet passed the police car, Macias shone his flashlight into the car and the passenger leaned back in the seat.

Macias and Watkins began following the Chevrolet, which made a U-turn, sped up, and entered a strip mall parking lot. When the Chevrolet sped across the parking lot, fishtailing and barely avoiding hitting another car, the officers activated the patrol car's lights and sirens. The Chevrolet did not initially heed the lights and sirens, but then it suddenly stopped.

Easley bolted out of the car and, clutching the waistband of his pants with his right hand, ran away from the patrol car. Macias and Watkins exited their patrol car and Watkins

shouted "Gun" or "He's got a gun."[1]  Macias pursued Easley on foot.

Easley continued to clutch his waistband with his right hand.  However, with his left hand he removed an object, later determined to be a gun, from his right pants' pocket and flung the item to his left.  Macias fired three shots, striking Easley twice in the right arm and once in the back.  Easley was shot within two to four seconds of throwing the gun.

**B.**

Easley and Session filed this action in California state court alleging, among other claims, the unreasonable and excessive use of force in violation of the Fourth and Fourteenth Amendments, made actionable under 42 U.S.C. § 1983.  The case was removed to the United States District Court for the Central District of California.  Plaintiffs filed a First Amended Complaint, which Macias answered asserting that his actions "were objectively reasonable under the circumstances" and that he was entitled to "qualified immunity from suit, liability and damages."

The parties negotiated a partial dismissal of some of the claims in the complaint and Macias agreed not to seek summary judgment on the remaining claims.  On February 29, 2016, the district court conducted a pretrial status conference and sua sponte raised the issue of Macias' entitlement to qualified immunity.  The district court ordered an evidentiary hearing on the issue, which was held on April 7 and 8, 2016.  The court heard testimony from Macias, Easley, and several fact and expert witnesses.  On June 1,

---

[1] The dashboard camera video entered as an exhibit in the trial court records that Watkins shouted these words to Macias.

2016, the district court issued its order determining that there remained no genuine issue of material fact for determination by a jury and that Macias was entitled to qualified immunity and judgment as a matter of law. Easley and Session filed a timely notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's summary judgment determination de novo. *Longoria v. Pinal Cty.*, 873 F.3d 699, 703 (9th Cir. 2017); *see also Glenn v. Wash. Cty.*, 673 F.3d 864, 870 (9th Cir. 2011) ("We review a district court's decision to grant summary judgment de novo, considering all facts in dispute in the light most favorable to the nonmoving party.").

## III. ANALYSIS

### A.

Before addressing the merits, we consider whether the district court erred by raising sua sponte the issue of qualified immunity. We have held that "[d]istrict courts unquestionably possess the power to enter summary judgment sua sponte even on the eve of trial." *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010). In so ruling, we followed the Supreme Court's command. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").

Easley questions the district court's ability to raise the matter of qualified immunity sua sponte, and alternatively argues that Macias waived his right to raise qualified

immunity as a defense. Neither argument is persuasive. Although qualified immunity is an affirmative defense, *see Siegert v. Gilley*, 500 U.S. 226, 231 (1991) ("Qualified immunity is a defense that must be pleaded by a defendant official."), a district court is not proscribed from directing the parties to brief the issue when it has been properly raised. Here, Macias raised qualified immunity as a defense in his answer, and he never waived or abandoned his claim of qualified immunity. Macias did not move for summary judgment, but reasonably asserted qualified immunity when directed by the district court to brief the issue.

The district court did not err by raising the issue of qualified immunity sua sponte and addressing it on summary judgment.

## B.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, 571 U.S. 3, 4–5 (2013) (*per curiam*) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine is designed to balance "two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."); *Green v. City & Cty. of S.F.*, 751 F.3d 1039, 1051 (9th Cir. 2014). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly

violate the law.'"  *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts engage in a two-pronged analysis to determine whether qualified immunity applies: "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  The second prong requires us to analyze two discrete sub-elements: "whether the law governing the conduct at issue was clearly established" and "whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law."  *Green*, 751 F.3d at 1052.

On de novo review of a district court's summary-judgment ruling, this Court "must view the evidence, including all reasonable inferences, in favor of the non-moving party."  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017); *see Sharp v. Cty. of Orange*, 871 F.3d 901, 909 (9th Cir. 2017).  Consequently, at summary judgment, an officer may be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right; and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation.  *See Pearson*, 555 U.S. at 232.

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*. at 236; *see*

*Morales*, 873 F.3d at 822. If the second prong is dispositive, courts need not analyze the first. *Pearson*, 555 U.S. at 236–37. In this case, the district court analyzed only the second prong and concluded that summary judgment was warranted.

We stated the applicable law in *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010):

> Apprehension by deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). However, an officer using deadly force is entitled to qualified immunity, unless the law was clearly established that the use of force violated the Fourth Amendment. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). . . .
>
> Case law has clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). On the other hand, it is not constitutionally unreasonable to prevent escape using deadly force "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.*

We further noted that "[w]hether the use of deadly force is reasonable is highly fact-specific . . . but the inquiry is an objective one." *Wilkinson*, 610 F.3d at 551 (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007), and *Graham*, 490 U.S. at

397). The question "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Wilkinson*, 610 F.3d at 551 (quoting *Graham*, 490 U.S. at 397). We also observed that "[a] reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." *Id.*

Here, taking the facts and allegations in the light most favorable to Easley, Macias' use of deadly force was objectively reasonable. It is an undisputed fact that Macias was concerned about the presence of a gun. Watkins, Macias's partner, had shouted "Gun" or "He's got a gun" when Easley ran away from the Chevrolet and the patrol car. Macias then saw Easley grab his waistband as he ran. It is undisputed that as he ran, Easley pulled an object from his right pants' pocket with his left hand and threw it away from his body. Macias shot Easley within two to four seconds of the object leaving Easley's hand.[2] Easley stated that he threw the gun in a motion similar to throwing a Frisbee across his body; this would necessarily involve some upper body or shoulder movement. Based on these undisputed facts, a reasonable officer may have reasonably feared that Easley had a gun and was turning to shoot him. Thus, viewing the critical evidence in the light most favorable to Easley, we conclude that Macias is entitled to qualified

---

[2] The dissent believes that we do not read the record in the light most favorable to Easley by relying on the two-to-four-second timeframe. Dissent at 18. But Easley did not claim that four seconds elapsed; as the dissent notes, he first estimated "maybe three or four seconds" and then agreed that it could have been only two or three. Regardless, any possible discrepancy is not dispositive. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (finding qualified immunity where a police officer shot a possibly threatening suspect after only "mere seconds to assess the potential danger").

immunity.  We need not, and do not, resolve the remaining disputed issues of fact in Macias' favor to reach this result.

As the Supreme Court noted in *Graham*, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  490 U.S. at 396–97.  This was just such a situation.  Macias' application of deadly force was a proportional response because "the Fourth Amendment does not require" a police officer to be "omniscien[t], and absolute certainty of harm need not precede [an officer's] act of self-protection."  *Wilkinson*, 610 F.3d at 553 (citation and internal question mark omitted).

## IV.  CONCLUSION

The district court committed no error when it sua sponte raised the issue of qualified immunity and addressed it on summary judgment because the district court retains this authority and because Macias raised and preserved qualified immunity as a defense.  On the merits, the district court correctly granted qualified immunity to Macias and summary judgment in his favor because his application of deadly force was objectively reasonable under the Fourth Amendment.

**AFFIRMED.**

PRATT, District Judge, dissenting:

In order to ensure Officer Macias is insulated from liability at this pre-trial stage in the present litigation, the district court and today's majority have stretched too thin the established bodies of law concerning both summary judgment and qualified immunity. I respectfully dissent and address each of these two issues in turn.

I

I first consider the law of summary judgment, a term which is something of a misnomer. The adjective "summary" suggests a simple and abbreviated judicial process coupled with a brief dispositional order; however, a proper, effective application of the summary-judgment standard is in fact complicated and time-consuming. *See* Hon. D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273, 273 (2010). Because Easley's Seventh Amendment right to trial by jury is at stake, we must "assiduously avoid deciding disputed facts or inferences" in our quest to determine whether this record contains any genuine factual disputes necessitating trial. *Id.* at 281–82; *see* U.S. Const. amend. VII. In the context of § 1983 actions, "the jury's role in vindicating constitutional rights has long been recognized by the federal courts." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721 (1999). It is therefore constitutionally imperative that we carefully and deliberately apply the law of summary judgment and its underlying principles to Easley's complaint to ensure we do not prematurely vitiate his jury demand or undermine the traditional role of the jury in § 1983 actions alleging a violation of constitutional protections.

"[S]ummary judgment is an extreme remedy." *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214

(9th Cir. 1980). "It should not be granted unless the movant has established its right to judgment with such clarity as to leave no room for controversy. It must be found that the other party is not entitled to recover under any discernable circumstances." *Id.* The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)).

To that end, we must view all the record evidence in the most favorable light to Easley, and we also must give him the benefit of every reasonable inference. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *see Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). The evidence to be considered is strictly limited to objective circumstances; the subjective beliefs of the defendant are categorically irrelevant. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. Courts may not issue findings of facts—either formal or de facto—when granting or denying summary judgment.[1] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (holding summary judgment courts may not "weigh the evidence and determine the truth of [a] matter" (quoting *Anderson*, 477 U.S. at 249)). Instead,

---

[1] The proscription against fact-finding on summary judgment is a deceptively difficult mandate. Both this Court and the district courts of this circuit sometimes inadvertently fail to adhere to it. *See Rand v. Rowland*, 154 F.3d 952, 957 n.4 (9th Cir. 1998).

courts are left only to make legal determinations. *See Anderson*, 477 U.S. at 251–52.

Summary judgment may properly be entered only against a party who has failed to make a showing sufficient to establish a genuine dispute as to the existence of an element essential to his case and upon which the party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To grant summary judgment, therefore, there can be no genuine issue of material fact. Fed. R. Civ. P. 56(a). A disputed issue is "genuine" when the evidence produced "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "As to materiality, the substantive law will identify which facts are material . . . . Factual disputes that are irrelevant or unnecessary will not be counted."[2] *Id*.

This case presents a particular class of summary judgment ruling: whether a law enforcement officer, alleged to have used unconstitutionally excessive or deadly force, is entitled to qualified immunity and cannot be sued under § 1983. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014) (affirming that qualified immunity provides entitled officers with immunity from suit rather than a defense to liability). Over time, this Court's recitations of the separate laws of summary judgment and qualified immunity began to mutate and coalesce, and the two bodies of law have been occasionally folded into one symbiotic permutation:

---

[2] Because the question of materiality relies on the underlying substantive law, I consider the materiality of the factual disputes in detail below following a review of the law of qualified immunity.

> [A]t summary judgment, an officer may be denied qualified immunity in a Section 1983 action "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation."

*Longoria v. Pinal Cty.*, 873 F.3d 699, 704 (9th Cir. 2017) (second alteration in original) (quoting *Hughes v. Kisela*, 862 F.3d 775, 779 (9th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1148 (2018)); *see also, e.g.*, *Townsend v. Basterrechea*, No. 1:16-cv-151, 2017 WL 242606 (D. Idaho Jan. 18, 2017) (applying the shortened standard without separate discussion or application of summary judgment principles). This abbreviated standard, in my view, gives short shrift to the importance of careful examination and construction of the factual record on summary judgment; to the courts' duty to fastidiously decline to make findings of fact; and to plaintiffs' constitutional rights under the Seventh Amendment, which necessarily hang in the balance. The U.S. Supreme Court has expressly held that summary-judgment standards are not different or lowered in the context of a claim to qualified immunity. *Tolan*, 134 S. Ct. at 1866. It cannot be enough for a court merely to *say* that it affords every fact and inference to the party opposing the motion; the court must affirmatively endeavor to do so. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

In this case, I perceive genuine, material factual disputes in the record that the district court and the majority have either improperly purported to resolve or improperly

ignored. In doing so, they have inadvertently encroached upon the constitutional province of the jury and upon Easley's Seventh Amendment rights. *See City of Monterey*, 526 U.S. at 709–10, 721.

Concerning the district court's approach to this case, the record shows the court made impermissible credibility determinations and engaged in other affirmative fact finding.[3] *See Anderson*, 477 U.S. at 249; *Tolan*, 134 S. Ct. at 1866. The court found Macias's controverted testimony to be credible, finding that Macias "saw the profile of the gun" when Easley removed it from his pocket and threw it away. The court went one step further and held there was "no evidence" to the contrary. However, significant portions of counsel's cross-examination of Macias at the evidentiary hearing was committed to circumstantial evidence suggesting Macias did not see the profile of the gun or have express knowledge of the presence of a gun. The district court erroneously either discounted or ignored the reasonable inferential value of Easley's evidence on this question when it concluded there was "no evidence" contrary to its finding that Macias saw the profile of the gun. *Cf. Tolan*, 134 S. Ct. at 1863. We cannot consider whether Macias subjectively believed Easley carried or threw a gun; we may only consider whether the objectively identifiable profile of a gun was visible to him. *See Inouye*, 504 F.3d at 712. Therefore, in drawing all inferences in Easley's favor

---

[3] With all deference to the district court and its judicial autonomy, I conclude its sua sponte evidentiary hearing contributed to the incidental fact finding that appears in its summary judgment order. While I agree with the majority that the evidentiary hearing does not constitute error per se, I am convinced that the risk of a court instinctually weighing credibility and implicitly finding facts should militate against this kind of proceeding. Notably, at oral argument, both parties conceded they had never previously participated in or witnessed this type of procedure.

to conform with the law of summary judgment, we may not find or presume either (1) that the object Easley threw during the foot chase was or was not visibly identifiable or (2) that Macias did or did not "see the profile" of a gun.

Additionally, the district court found that the incident occurred in a "high-crime area." Macias suggests we should affirm this finding, which should support his decision to use deadly force in this case. However, the case law Macias relies upon concerning so-called "high-crime areas" involves reasonable-suspicion *Terry* stops, not allegations of excessive force. *See, e.g.*, *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000). According to those cases, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Id.* at 124. Furthermore, this Court has warned that "citing of an area as 'high-crime' requires careful examination by the court, because such a description, unless properly limited and factually based, can easily serve as a proxy for race or ethnicity." *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc). Given the limited record evidence supporting a finding of a high-crime area and the fact that such a finding relies on inference in Macias's favor rather than Easley's, I conclude that consideration of the purported "high-crime area" to Macias's benefit is contrary to the summary-judgment evidentiary standard.

The majority has avoided these two summary-judgment pitfalls, but it has joined the district court in three others. First, the district court and the majority have improperly considered the fact that Easley conceded *post facto* that the object thrown was in fact a gun. The standard is that the record must be evaluated "from the perspective of a

reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1776–77 (2015) (noting that courts' refusal to rely on hindsight also serves an important protective role for officials asserting qualified immunity); *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) ("[W]hen considering qualified immunity, we are also limited to considering what facts the officer could have known at the time of the incident." (quoting *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017))).  The majority's consideration of knowledge gained after the incident is contrary to both the proper standard concerning reasonableness and the principles of summary-judgment evidence.  Therefore, we can give no weight to Macias's claim in his briefing that he "correctly thought [Easley] was armed," and I reject the majority's apparent reliance on the fact that the object thrown was "later determined to be a gun."

Second, the district court and the majority fail to properly construe the record pertaining to the amount of time that elapsed between Easley disarming himself and Macias firing on him.  On direct examination, Easley testified that "maybe three to four seconds" passed, but on cross-examination, he affirmed defense counsel's assertion that "two or three seconds" had elapsed.  The discrepancy was not explored in the hearing, but for purposes of summary judgment, of course, this Court must construe the testimony in the light most favorable to Easley.  *See Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016), *cert. denied sub nom. Soeth v. Newmaker*, 137 S. Ct. 2217 (2017).  A jury could credit Easley's assertion that four seconds elapsed between the moment he threw the gun and the moment Macias fired

the first shot, and we must therefore accept that allegation as true.[4]   The district court determined it did not need to construe the record on the question of timing because it was not a "material fact."[5]   However, the majority appears to sidestep the question of materiality entirely by concluding there is no genuine factual dispute.  The majority states it is an "undisputed fact[]" that "Easley was shot *within two to four seconds* of throwing the gun."  However, this statement is not a fact at all—it is a range of possible facts.  Neither is it undisputed.  Each party has flatly contradicted the other's version of the timing of events.  The majority's recitation reveals it has not properly construed the record in the light most favorable to Easley.  Four seconds, two seconds, and zero seconds are not constitutionally equivalent in these circumstances; we cannot so easily dismiss the distinction by stating that the event occurred "within two to four seconds."

Third, neither the district court nor the majority acknowledge Easley's testimony—which we must accept as true—stating that throughout the chase, he did not turn to look back at Macias, did not face Macias, and did not level the object in Macias's direction.

Having clarified these several points of departure between myself and the majority concerning the proper evidence for consideration on summary judgment, I proceed

---

[4] Macias argues the credibility of Easley's version of the timeline is "dubious" and contrary to physical evidence, but he concedes it must be accepted as true for summary-judgment purposes.

[5] I disagree with the district court's materiality conclusion and discuss my analysis thereof in Section II(A) below.

to consider whether the factual disputes are material pursuant to the law of qualified immunity.

## II

Concerning the doctrine of qualified immunity, I agree in general terms with the majority's recitation of the applicable law.  In essence, there are three inquiries we must perform to determine whether an official is entitled to qualified immunity: (1) whether the official's conduct violated a plaintiff's constitutional right; (2) whether the constitutional right asserted by the plaintiff was clearly established in the law as it was at the time of the official's conduct; and (3) whether the law at the time would have made it clear to a reasonable official that the alleged conduct was unlawful under the circumstances.  *See Green v. City & Cty. of S.F.*, 751 F.3d 1039, 1051 (9th Cir. 2014); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  On summary judgment, if these three inquiries could be answered in the affirmative upon development of the record at trial, the official is not entitled to qualified immunity. *Green*, 751 F.3d at 1052–53.

The majority concludes that one (or perhaps more) of these inquiries must be answered in the negative in this case. However, it is not clear which question is the dispositive one. For its part, the district court has conflated the first inquiry— whether an official's exercise of force was unreasonable and therefore a violation of a constitutional right—with the third inquiry—whether a reasonable officer would have understood particular conduct to be unlawful.[6]  *Compare*

---

[6] The district court purportedly based its decision on the second and third prongs of the qualified-immunity test, but it also relied solely on a reasonable-force analysis, which alone answers only the first prong.  The

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose* (*Hells Angels*), 402 F.3d 962, 971 (9th Cir. 2005) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *with Longoria*, 873 F.3d at 705–09 (applying the factors for evaluating the reasonableness of the use of force as applied to the first—not second—prong of the qualified immunity standard). Though each inquiry turns on a determination of objective reasonableness, the two questions are neither identical nor coextensive. The first asks whether the use of force was reasonable, while the third asks whether a reasonable official would have known the force used was unreasonable under the law.**[7]**

---

majority states the district court relied on the second and third prongs, then proceeds to review the district court's ruling; however, its ultimate conclusion that Macias's "application of deadly force was objectively reasonable" suggests it relies on the first prong.

**[7]** These two questions, though discrete, require some overlapping analysis. This redundancy may account for the present confusion between the different qualified-immunity prongs. The first prong was initially a required consideration, but it later became a discretionary and sometimes disfavored consideration in cases in which the established-law prong was dispositive. *See generally Camreta v. Greene*, 563 U.S. 692, 705–07 (2011); *Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009). The Supreme Court's most recent decision on this question may be read to suggest that the first prong does not appertain to qualified immunity at all, but to the substance of the underlying § 1983 claim. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("[T]he Court need not, and does not, decide whether [the official] violated the Fourth Amendment when he used deadly force against [the plaintiff]. For even assuming a Fourth Amendment violation occurred—a proposition that is not at all evident—on these facts [the official] was at least entitled to qualified immunity."); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (noting a

Regardless, we review summary judgment de novo. And on de novo review, I conclude that genuine issues of material fact remain as to all three qualified-immunity inquiries. Summary judgment was therefore improper. I address each of the three inquiries individually.

A

The first inquiry asks whether the defendant official "violated a federal statutory or constitutional right." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Therefore, our "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). In this case, "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct." *Id.* at 395. The Fourth Amendment guarantees citizens that they will "be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. "[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham*, 490 U.S. at 395.

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," . . . its proper application requires careful

---

defendant official may be entitled to qualified immunity on the established-law prong *even if* he had in fact violated a constitutional right). Perhaps the established-law prong will ultimately subsume the currently bifurcated qualified-immunity analysis. But a denial of qualified immunity at present requires consideration of the existing first prong to determine whether Macias's alleged conduct constitutes a violation of a constitutional right, which by necessity abuts the underlying merits of the complaint.

> attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). It is in any case well established that "[t]he use of deadly force to prevent the escape of . . . suspects, whatever the circumstances, is constitutionally unreasonable." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.*

The dispositive consideration for the district court was whether there were objective identifiers that Easley "pose[d] an immediate threat to the safety of" Macias. *Id.* I do not agree that the evidence—construed pursuant to the summary-judgment standard—reflects an indisputable, objectively perceptible, and immediate threat. There remain genuine disputes about, *inter alia*, Macias's line of sight on the gun and the timing between Easley's self-disarming and Macia's decision to fire on him. Therefore, it is possible for a jury to conclude on this record that Macias first reasonably suspected Easley was armed, then clearly observed Easley divest himself of the suspected firearm, and finally decided—*after* sufficient time to recognize Easley was unarmed and not dangerous—to fire upon him.

The district court avoided this conclusion in part by deciding that the timing of this event is immaterial for summary-judgment purposes. I disagree. It is, for example, self-evident, that if an officer observes a suspect disarm

himself and then pursues the suspect on foot *away* from the discarded weapon for thirty seconds, he may not then decide to fire upon the suspect and claim in good faith that he was in fear of the suspect using the discarded weapon to hurt him. Likewise, it is clear that if an officer observes a suspect remove a firearm from his pocket toward the officer and the officer shoots the suspect before the firearm leaves the suspect's hands, the officer's fear was reasonable even if the suspect later claims it was his intent to discard the weapon. This case, then, presents a complex line-drawing exercise: at what point between these two extremes does a fear of immediate harm become unreasonable?

As the majority notes, the law is clear that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Indeed, at the evidentiary hearing, Macias presented expert testimony regarding the time it takes "to identify a threat, process it, make a decision, and then execute a response." Macias's expert testified that the "lag time" that occurs "between an action and a reaction" consists of "milliseconds," or "anywhere from [a] quarter-second to a third of a second." In this case, according to the summary-judgment record, Macias had four seconds to deliberate after Easley disarmed himself before he fired the first shot. Four seconds—by pure definition—pushes past the outer bounds of the case law's provision for "split-second judgments" and beyond the "milliseconds" needed to process new information according to Macias's own expert.

Of course, if a jury were to determine that fewer than four seconds passed or that Macias could not have

objectively seen or known that Easley had disarmed himself, this calculus changes. That is why the matters of timing and of Easley discarding his firearm remain genuine, triable issues of material fact. It does not settle the issue to say simply that Easley was shot "within two to four seconds of throwing the gun."[8] I therefore dissent from the majority's conclusion that Macias's "application of deadly force was objectively reasonable" as a matter of law.

## B

The second inquiry asks whether the constitutional "right at issue was clearly established at the time of the incident." *Torres*, 648 F.3d at 1123. The first step in determining whether Macias's alleged conduct violated a clearly established right is to determine whether case law existed at the time of the incident in which "an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *see Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). In some circumstances, the existence of case law proscribing the alleged conduct will be "obvious." *White*, 137 S. Ct. at 552. For example, when an officer is alleged to have "seize[d] an unarmed, nondangerous suspect by shooting him dead," as in *Garner*, it is "obvious" that such

---

[8] Though the Supreme Court recently held an officer was entitled to qualified immunity when exercising deadly force with "mere seconds to assess . . . potential danger," the circumstances in that case involved a suspect armed with a knife who refused to comply with directions to disarm herself and was accosting a bystander within striking distance. *Kisela*, 138 S. Ct. at 1152. We are confronted with distinguishable facts on summary judgment in this case: Easley was disarmed and not within striking distance of a third party. Therefore, a general "mere seconds" finding such as the one relied upon in *Kisela* cannot fully and properly inform our analysis in this case.

conduct is unconstitutional. *Garner*, 471 U.S. at 11; *see White*, 137 S. Ct. at 552; *see also Graham*, 490 U.S. 395–96 (setting out the general reasonableness standard for excessive-force claims). Insofar as Easley asserts that Macias clearly observed Easley disarm himself and nevertheless proceeded to fire on him knowing he was not armed, he is alleging this case is the rare but "obvious one where *Graham* and *Garner* alone offer a basis for decision." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). For the purposes of summary judgment, our analysis should end there; *Graham* and *Garner* were well established at the time of the incident.

Even if this is not the "obvious" case, I conclude other clearly established case law in this circuit would have given officers fair notice that the conduct alleged here was unconstitutional at the time of the incident. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *Brosseau*, 543 U.S. at 198). In non-obvious cases, courts must explicitly identify particular court rulings demonstrating the unlawfulness of the alleged conduct. *White*, 137 S. Ct. at 552. "Such specificity is especially important in the Fourth Amendment context, where . . . '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Saucier*, 533 U.S. at 205). This specific-case requirement ensures that officers are not exposed to liability without a "fair and clear warning of what the Constitution requires." *Sheehan*, 135 S. Ct. at 1778 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011) (Kennedy, J., concurring)); *see Kisela*, 138 S. Ct. at 1152.

This Court has held that its 1991 decision, *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir.

1991), fairly informs officers of the constitutionality of the use of deadly force in circumstances sufficiently analogous to the present case. *See Lopez*, 871 F.3d at 1020. In *Curnow*, police officers broke down a door to confront a suspect. 952 F.2d at 323. The officers claimed that as they entered through the doorway, the suspect picked up a nearby firearm and raised the weapon as he began to turn towards the officers. *Id.* However, for summary-judgment purposes only, the court accepted as true the contrary testimony of a witness who stated the suspect did not have the gun in his hand, did not raise his arm, and did not turn toward the officers. *Id.* The officers shot the suspect in the back. *Id.* This Court held, "[T]he police officers could not reasonably have believed the use of deadly force was lawful because [the suspect] did not point the gun at the officers and apparently was not facing them when they shot him the first time." *Id.* at 325.

In the present case, as in *Curnow*, the record for summary-judgment purposes reveals that Easley was not holding a gun at the time of the shooting, nor was he raising his arm toward or turning to face Macias. Further, in *Curnow*, the suspect had a firearm within immediate reach, while in this case, Plaintiff had thrown his firearm away from his person and continued to run in the opposite direction of the gun. Therefore, *Curnow*, a twenty-year-old decision at the time of the shooting in this case, gave Macias a fair and clear warning that his use of deadly force—at least on the facts as construed for summary judgment—was not constitutional.

The parties present competing arguments regarding the value of *Curnow* for the purposes of the present established-law inquiry. Macias argues that *Curnow* is legally distinguishable from the present case. There is some tension

in the case law concerning how distinguishable a case may be on its facts before it cannot be construed as clearly established law for qualified-immunity purposes. On the one hand, the Supreme Court has repeatedly admonished this Court "not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (quoting *Sheehan*, 135 S. Ct. at 1775–76); *see al-Kidd*, 563 U.S. at 742 (majority opinion). To constitute clearly established law, the "existing precedent must have placed the . . . constitutional question beyond debate" and must "'squarely govern[]' the specific facts at issue." *Kisela*, 138 S. Ct. at 1152–53 (first quoting *White*, 137 S. Ct. at 551; then quoting *Mullenix*, 136 S. Ct. at 310). At the same time, the Supreme Court has consistently maintained that its "caselaw does not require a case directly on point for a right to be clearly established," *id.* at 1152 (quoting *White*, 137 S. Ct. at 551), and that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). This of course must be true because every individual case will present at least nominal factual distinctions. If precisely identical facts were required, qualified immunity would in fact be *absolute* immunity for government officials.

With these principles in mind, I conclude that clearly established law for qualified-immunity purposes will necessarily contain both operative circumstances—i.e., the circumstances from which the constitutional violation flowed—and ancillary circumstances—i.e., the surrounding factual details of the case that bear no constitutional significance. The operative circumstances described in *Curnow* include: (1) the suspect was not holding a gun when shot even though a gun was within his reach, (2) the suspect did not point a gun at the officers, and (3) the suspect did not turn to face the officers. These same circumstances are the

foundational points of fact in the present case for summary-judgment purposes.

Macias notes this case involved a foot chase, while *Curnow* involved officers breaking down a door to intercept a seated suspect they believed was armed. This is indeed a factual distinction. However, both *Curnow* and the present case involve similarly high-pressure situations for the officers. Macias has presented no principled reason why he is subject to a lower threshold than the officers in *Curnow*, who were also involved in quickly evolving and tense circumstances. Ultimately, the factual distinction Macias relies upon does not overcome the parallel operative circumstances between the two cases.

In broader terms, Macias contends the only court ruling that would satisfy the established-law inquiry would be a case holding that it is "unconstitutional for an officer to shoot at an armed suspect who grabbed and raised an object immediately before being shot, simply because the suspect let go of the object seconds before being hit." This curious characterization of the present circumstances is strained and self-contradictory; it claims Easley was simultaneously armed and unarmed. But more to the point, the law does not require this level of precise factual identity for the unconstitutionality of certain conduct to be "clearly established."

In this case, there exists a construction of the disputed facts that is controlled by the clearly established expectations for government officials both as generally set forth in *Garner* and *Graham* and as specifically set forth in *Curnow*.

C

The third inquiry asks whether "a reasonable officer would have understood her conduct to be unlawful" in the circumstances alleged. *Torres*, 648 F.3d at 1123. Again, this is a separate question from whether Macias's conduct was reasonable. Macias enjoys an extra layer of deference on this third inquiry insofar as he may have reasonably *believed* his conduct was permissible even if it was not. In recognition of this extra deference, "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

However, the proper answer to this inquiry, like that of the first inquiry, is presently lost within the contested facts. If the objective circumstances would have unequivocally informed a reasonable officer that Easley was disarmed and if four full seconds to deliberate passed between that officer's perception thereof and his decision to shoot Easley, I conclude there is no room for a reasonable officer with an understanding of *Garner*, *Graham*, and *Curnow* to assert that the use of deadly force was reasonable. Therefore, there remain genuine issues of material fact bearing upon resolution of this inquiry. Based on the summary-judgment record taken in the light most favorable to Easley, Macias's entitlement to qualified immunity is not presently established as a matter of law.

D

My conclusion that summary judgment was improper is not equal to a conclusion that Macias is not entitled to qualified immunity. Macias may prove in further proceedings that he is so entitled. He simply has not done so at this pre-trial, summary-judgment stage. The proper resolution to this appeal, therefore, is that we should reverse

the grant of summary judgment and remand for resolution of the contested factual issues by a jury. *See, e.g.*, *Zion v. Cty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1132 (9th Cir. 2017); *Longoria*, 873 F.3d at 705; *Green*, 751 F.3d at 1053.

It is well established that the question of eligibility for qualified immunity should be resolved at the earliest stage possible in the proceedings because it is an immunity from suit and not merely a defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); *see Morales*, 873 F.3d at 822. But in this case, the district court's two-day evidentiary hearing was a de facto bench trial, and Macias therefore has already suffered whatever abstract harm might result from an infraction upon his asserted immunity from suit, mooting consideration of that injury for our purposes on appeal.

When, as here, triable issues of fact preclude resolution of an official's entitlement to qualified immunity, then the immunity question is "transformed from a doctrine providing immunity from suit to one providing a defense at trial." *Morales*, 873 F.3d at 823. On remand, "special interrogatories to the jury can be used to establish disputed material facts," which the district court can then rely upon to determine Macias's eligibility for qualified immunity as a matter of law. *See id.* at 823–24.

## III

The requisite analyses in this case are difficult and complex; nonetheless, we must diligently and carefully perform each one to ensure that we fulfill our roles as neutral arbiters of the law in § 1983 actions alleging excessive force, which are presently subject to increased public scrutiny. Though the law is complicated, the outcome in this case is

simple: there remain genuine, triable disputes concerning facts material to Macias's entitlement to qualified immunity. I therefore conclude we are prohibited from granting summary judgment at this stage in the proceedings. My conclusion in no way prejudices Macias's ability to prove his entitlement to qualified immunity at trial, and it also avoids any potential for irremediable prejudice to Easley's Fourth or Seventh Amendment rights. And because we are not permitted to weigh evidence or make credibility determinations, we may not opine as to the likelihood either that Easley will prevail on the merits of his claim or that Macias will be able to establish entitlement to qualified immunity at trial. The best course for us is to reverse and remand for further proceedings. I therefore dissent from the majority's decision to affirm the district court.